GINA DURHAM, Bar No. 295910
JORDAN CHISEK, Bar No. 320919
DLA PIPER LLP (US)
555 Mission St., Suite 2400
San Francisco, CA 94105
Tel: 415-836-2500
Gina.Durham@us.dlapiper.com
Jordan.Chisek@us.dlapiper.com

OSCAR M. OROZCO-BOTELLO, Bar No. 313104
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel: 310-595-3077
Oscar.Orozco-Botello@us.dlapiper.com

Attorneys for Plaintiff
Midjourney, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Midjourney, Inc., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>Fantastic Labs Sp. z o. o., a Poland Limited Liability Company, Wordle Inc., a Delaware Corporation, and Nicholas Sheriff, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>1. **FEDERAL FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125(A)**<br><br>2. **COMMON LAW TRADEMARK INFRINGEMENT**<br><br>3. **UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Midjourney Inc. ("Plaintiff" or "Midjourney") hereby files this Complaint against Defendants Fantastic Labs Sp. z. o.o. ("Fantastic Labs"), Wordle, Inc., ("Wordle") and Nicholas Sheriff ("Sheriff") (collectively "Defendants"), alleging as follows:

**NATURE OF THE CASE**

1. This action arises out of Defendants' improper efforts to mislead consumers by passing themselves off as Midjourney. Using an identical MIDJOURNEY mark in connection with identical or closely related artificial intelligence ("AI") software, Defendants duped Apple App Store consumers into downloading a mobile software application and paying $20 immediately after download under the mistaken belief that the application originates from or is affiliated, sponsored or approved by Midjourney.

2. Plaintiff Midjourney is an innovative independent research laboratory that uses AI software that allows consumers to generate images from text prompts. Midjourney started a private beta in early 2022 and quickly garnered a significant user base in the tens of thousands. Midjourney then officially launched the public beta version of its software offerings in July 2022, again quickly earning widespread acclaim and a large user base for its text to image offerings.

3. Among other recognitions, even before its public beta, Midjourney's AI software was discussed by name in connection with its AI image services on the popular comedy news show *Last Week Tonight with John Oliver*, and was credited for designing the June 11, 2022 cover of *The Economist*.

4. Seeking to capitalize on Midjourney's notoriety and the millions of loyal users already amassed by Midjourney, Defendants launched a "free" downloadable mobile application months later, accessible via the Apple App Store on or around October 7, 2022. The app, which immediately prompts users to upgrade by paying $20.00, uses the identical "Midjourney" name that Midjourney

has used with its software since inception, and the summary posted next to the download offer promises that the application enables "Ai [sic] Generated Art."

| **Midjourney's use of the MIDJOURNEY Trademark** | **Defendants' Infringing Use** |
|---|---|
|  |  |

5. Believing that they are accessing a mobile application authorized by Plaintiff Midjourney, numerous consumers have already been duped into downloading the application. The application was listed as a top app immediately below popular applications by well-known companies like Dropbox and YouTube.

6. Duped consumers have expressed anger and disappointment, particularly about the quality of the mobile application, which is causing significant and irreparable damage to the Midjourney brand that Plaintiff has worked hard to develop.

7. Despite Midjourney's efforts to resolve this matter without Court intervention, Defendants have ignored Midjourney's demands to cease this unlawful activity, and Defendant Sheriff has bragged on his own public Twitter feed about misappropriating Midjourney's name and making over "$4000 per hour in revenue!"

8. Midjourney brings this action for redress and injunctive relief enjoining Defendants' blatant acts of consumer deception and the appropriation of a brand in which Midjourney has deeply invested.

## THE PARTIES

9. Plaintiff, Midjourney is a corporation organized under the laws of Delaware with its principal place of business in South San Francisco, California.

10. Defendant Fantastic Labs is a limited liability company organized under the laws of Poland with a business address in San Francisco, California.

11. Defendant Wordle is a corporation organized under the laws of Delaware with a business address in San Francisco, California.

12. Upon information and belief, Defendant Sheriff is an individual residing in San Francisco County, California.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1338(a) and (b), because the claims address federal questions concerning the Lanham Act. This Court also has supplemental jurisdiction over Midjourney's state law claims pursuant to 28 U.S.C. § 1367(a), because all of Midjourney's claims arise out of a common nucleus of facts.

14. This Court has personal jurisdiction over Fantastic Labs because the address for the business listed on its MIDJOURNEY trademark application is: 548 Market Street San Francisco, California 94104 and because it has conducted business in the state of California and attempted to derive financial benefit from residents of the State of California, through the sale of its infringing MIDJOURNEY mobile application on the Apple App Store.

15. This Court has personal jurisdiction over Wordle because the address for the business listed on its MIDJOURNEY trademark application is: 548 Market Street San Francisco, California 94104 and because it has conducted business in the state of California and attempted to derive financial benefit from residents of the State of California, through the sale of its infringing MIDJOURNEY mobile application on the Apple App Store.

16. This Court has personal jurisdiction over Nicholas Sheriff because he resides in San Francisco County, California and because he has attempted to derive financial benefits from residents of the State of California, through the sale of the infringing MIDJOURNEY mobile application on the Apple App Store.

17. Venue is proper in this judicial district pursuant to at least 28 U.S.C. §§1391 and/or 1400, including because a substantial part of the events giving rise to the claims herein occurred within this judicial district, and because a substantial number of Plaintiff's customers who reside in this district may be confused by Defendants' infringing conduct. Further, Plaintiff is headquartered in this district and has its principal place of business in this district and has been harmed by Defendants' conduct in this district.

## INTRADISTRICT ASSIGNMENT

18. This is an intellectual property action and therefore shall be assigned on a district-wide basis per Civil L.R. 3-2(c).

## FACTUAL ALLEGATIONS

### Midjourney And Its Trademark

19. Midjourney operates a very well-known website and software offering that generates images via text prompts using artificial intelligence technology. Users of the software can type in a series of words and the AI technology searches image data to generate unique image sets based on the text prompts. An example of a prompt and images generated on October 20, 2022 using Midjourney's AI software offerings is depicted below.



Thereafter, among other functionalities, a user can select an image from the generated image set to upscale an image or create variations. The user can then select an image to save to the user's gallery or share with others.

20. Midjourney offers its AI software services via the Discord communications application.[1]

21. In early 2022, Midjourney offered a private beta version of its AI software, which quickly garnered a significant user base in the tens of thousands before Midjourney launched its public beta version.

22. Since the company entered its open beta stage in July 2022, it has used the "Midjourney" name to identify not only the company but its software offering. Plaintiff's Midjourney name is hereinafter referred to as the "MIDJOURNEY Mark."

23. Plaintiff has continuously used the MIDJOURNEY Mark on its website and in connection with its AI software offerings since launching its company.

24. Midjourney has attracted a significant number of users over the past several months, with over three million listed users as of the filing of this

---

[1] Discord is a voice, video and text communication service used by over a hundred million people to hang out and talk with their friends and communities. *See* https://discord.com/company (last visited October 13, 2022).

Complaint. As shown in the image below captured on October 11, 2022, Midjourney has well over three million users, with hundreds of thousands of active users at any given moment.

25. In addition to its millions of users, Midjourney has also amassed significant media attention in connection with its AI image services. For example, as shown below, the company was discussed in a segment titled "AI Images" on the popular late night comedy news show *Last Week Tonight with John Oliver*—a show that averages approximately 4.1 million weekly viewers.



AI Images: Last Week Tonight with John Oliver (HBO)

26. Midjourney's AI software was used to design the front cover of the June 11, 2022 publication of *The Economist*, which has an approximate online audience of around sixty million.




It was time for the ultimate test: to ask MidJourney to render "artificial intelligence's new frontier" in the style of an *Economist* magazine cover.

27. Midjourney is the owner of the pending United States Trademark applications for MIDJOURNEY (Serial Nos. 97597218 and 97597231), covering software for using AI to generate images from text and related services.

28. By virtue of its open and continuous use of the MIDJOURNEY Mark in interstate commerce, Midjourney also owns common law rights in and to the MIDJOURNEY Mark.

**Defendants' Infringing Activities**

29. Months after Midjourney launched its incredibly successful text to image AI software, Defendant Fantastic Labs listed a mobile application on Apple's App Store in September 2022 and named the mobile application "MIDJOURNEY". The application was originally designated as being in a "pre-launch" stage but advertised that it would be providing "AI generated art". The "pre-launch" promotion for the mobile application featured the MIDJOURNEY Mark.

30. Midjourney promptly submitted a takedown request with the Apple App Store and requested that the application be removed based on the clear and

1  egregious trademark infringement, and pursuant to Apple's policy, Defendant
2  Fantastic Labs received notice of Midjourney's objection.

3    31. Rather than heeding Midjourney's takedown notice, within hours of
4  receiving the notice, Defendant Fantastic Labs and Wordle jointly filed a trademark
5  application on September 16, 2022 for MIDJOURNEY covering, "downloadable
6  software in the nature of a mobile application for creating and editing photographs
7  and for recording and editing videos using AI" in which they fraudulently declared
8  to the United States Patent and Trademark Office that Defendants Fantastic Labs
9  and Wordle are the entities entitled to use the MIDJOURNEY mark in commerce
10 and know of no other persons that have the right to use the mark (hereinafter
11 referred to as "the Fraudulent MIDJOURNEY Trademark Application").

12   32. Upon information and belief, based on his public comments, the
13 telephone number listed in the Fraudulent MIDJOURNEY Trademark Application
14 belongs to Defendant Sheriff.

15   33. On or around October 7, 2022, Defendant Fantastic Labs made the
16 unauthorized Midjourney mobile application available for download, and, upon
17 information and belief, thousands of downloads ensued.

18   34. Upon information and belief, Defendant Sheriff is a trademark pirate
19 who has sought on numerous occasions to usurp the trademark rights of rightful
20 owners, and in this case, was personally involved in directing the wrongful conduct
21 alleged herein with respect to the unauthorized Midjourney mobile application and
22 the Fraudulent MIDJOURNEY Trademark Application, including given that the
23 telephone number listed in the Fraudulent MIDJOURNEY Trademark Application
24 is the number Defendant Sheriff lists as his cellphone number on his public Twitter
25 account.

26   35. In fact, in response to a tweet calling the unauthorized Midjourney
27 mobile application a scam, Defendant Sheriff has bragged about his trademark
28 piracy on his personal Twitter account in which he touts "his" application ("I own

the trademark for "Midjourney"!") in the same Tweet wherein he acknowledges the existence of Midjourney, Inc.:



36. Through the same Twitter account, Defendant Sheriff further brags that "My IP co owns hundreds of brands including Wordle (I am talking to NYT right now)". Upon information and belief, Wordle is a popular web-based word game published by the New York Times, which has also been targeted by Defendant Sheriff's piracy. Earlier this year, Defendant Sheriff signed a trademark application for WORDLE in which he declared under penalty of perjury that no other person has the right to use WORDLE in commerce notwithstanding that the New York Times had begun publishing the game years earlier.

37. Upon information and belief, Defendant Sheriff is behind the formation of Defendant Wordle, which is an applicant (along with Defendant Fantastic Labs) for the Fraudulent MIDJOURNEY Trademark Application.

38. Although trademark rights in the United States are created through prior use, as opposed to trademark filings, Defendants have filed the Fraudulent MIDJOURNEY Trademark Application (as well as trademark applications incorporating the marks of others), with a transparent bad faith intent to profit from the filings.

39. In this case, Defendants also seek to profit from the confusion that they created with the launch of the unauthorized Midjourney mobile application, without any regard to the harm that would result to consumers or to Midjourney, the legitimate business owner. Indeed, Sheriff posted on October 13, 2022, on his public Twitter account that a viable product is not even required to have a popular mobile application, only visibility and converting on it in the short term:



Nick @nickjsheriff · 5h
Having a #1 app or a top overall app in a particular country, simply means you are competitive for a certain time period, on market fit metrics.

It doesn't mean your product is viable in any way!

It simply means you can obtain visibility & covert it, short term.

40. More specifically, following the launch of the unauthorized mobile application, Defendant Sheriff was quick to brag on his personal Twitter account about how he is making $4,000 an hour from the unauthorized application.

**Harm to the Public and to Plaintiff's Reputation**

41. Consumers have been deceived by and, unless enjoined by this court, will continue to be deceived by Defendants' unauthorized Midjourney mobile application because it displays an imitation of the MIDJOURNEY Mark and promises to produce AI-generated art.

42. Duped consumers have been quick to express their dissatisfaction with the unauthorized Midjourney mobile application. One of the reviews (depicted

below) states, in relevant part, "Nothing near the professional quality of the discord version," which is a confused consumer's reference to Plaintiff's legitimate services offered in connection with the MIDJOURNEY Mark.



43. These reviews not only establish that consumers are confused into believing that Plaintiff Midjourney is the source of or is affiliated with Defendants' application, but they also demonstrate the irreparable reputational damage being done to Midjourney as a result of Defendants' wrongful and willful conduct.

44. As of October 17, 2022, Apple removed from the Apple app Store, but Plaintiff remains concerned that Defendants will attempt to re-launch the infringing application and/or continue to pursue the Fraudulent Midjourney Trademark Application.

///

///

///

## FIRST CAUSE OF ACTION

**Federal false designation of origin – 15 U.S.C. § 1125(a))**

45. Midjourney repeats and realleges each and every allegation contained in paragraphs 1 through 44 above, as if set forth herein in full.

46. The MIDJOURNEY Mark is inherently distinctive, and Midjourney has used and marketed the marks to distinguish and to identify its company and to promote its AI software in the marketplace.

47. Midjourney has acquired substantial goodwill in the MIDJOURNEY Mark by virtue of its continued use, its substantial user-base and unsolicited recognition in the media.

48. Defendants' use of the MIDJOURNEY Mark has already caused confusion, mistake, or deception, and constitutes infringement of Midjourney's trademark, false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).

49. Defendants were fully aware of Midjourney, the Midjourney AI software services, and the MIDJOURNEY Mark prior to Defendants posting the mobile application for pre-launch in September 2022 and formally launching the mobile application on the Apple app store on or around October 7, 2022.

50. As a result of Defendants' acts of trademark infringement, false designation of origin and unfair competition, Defendants have diminished the reputation in the Midjourney brand, and significantly benefited in the marketplace, at the expense of Midjourney.

51. As a result of Defendants' unlawful conduct, Midjourney has been and continues to be substantially and irreparably harmed.  If Defendants' infringement and unlawful acts are permitted to continue, Midjourney will sustain further damage and irreparable injury. Through such unfair acts and use of an identical mark, the value of the MIDJOURNEY Mark will be diminished or destroyed, for which damage Midjourney cannot be adequately compensated at law.

52. Defendants have derived unlawful gains and profits from its infringement of the MIDJOURNEY Mark, and Defendants thereby have caused loss and damage to the goodwill in the MIDJOURNEY Mark. As a proximate result of Defendants' infringement, Midjourney has suffered and is likely to suffer injury to its business, goodwill, reputation, and profit, all to the damage of Midjourney, in an amount as yet unknown but to be proven at trial.

53. Midjourney's damages may be trebled pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a) because Defendants' actions have been committed willfully, with intent to deceive and with full knowledge of Midjourney's prior use of the marks.

54. Midjourney is therefore entitled to a preliminary and permanent injunction enjoining and restraining Defendants from using the MIDJOURNEY Mark.

## SECOND CAUSE OF ACTION

**Common Law Trademark Infringement**

55. Midjourney repeats and realleges each and every allegation contained in Paragraphs 1 through 54 above, as if set forth herein in full.

56. In addition to the rights violated under the Lanham Act, Midjourney has valid common law rights in the MIDJOURNEY Mark under California law.

57. Defendants' use of the identical MIDJOURNEY Mark is in violation and derogation of Midjourney's common law rights, and is likely to cause confusion, mistake and deception among customers and the public as to the source, origin, sponsorship or quality of Midjourney's goods and services, thereby causing loss, damage and injury to Midjourney and the public. Defendants knew that its conduct was likely to mislead the public.

58. Upon information and belief, the foregoing conduct by Defendants has been knowing, deliberate, willful.

59. Defendants' wrongful acts, as alleged above, have permitted or will permit it to make substantial sales and/or profits on the strength of Midjourney's customer recognition of the MIDJOURNEY Mark.

60. As a result of Defendants' unlawful conduct, Midjourney has been and continues to be substantially and irreparably harmed. If Defendants' unfair competition and acts are permitted to continue, further damage and irreparable injury will be sustained by Midjourney. Through such unfair acts and use of the MIDJOURNEY Mark, the value of the marks will be diminished or destroyed, for which damage Midjourney cannot be adequately compensated at law.

61. Defendants have derived unlawful gains and profits from its acts of infringement, as alleged above, and has caused loss and damage to Midjourney and the goodwill in the MIDJOURNEY Mark. Midjourney has suffered and is likely to suffer injury to its business, goodwill, reputation, and profit, in an amount as yet unknown but to be proven at trial.

62. Midjourney has no adequate remedy at law for, and is being irreparably harmed by, Defendants' continuing violation of it rights as set forth above, and such harm will continue unless Defendants are enjoined by this Court.

63. Midjourney is therefore entitled to a preliminary and permanent injunction enjoining and restraining Defendants from use of the MIDJOURNEY Mark.

## THIRD CAUSE OF ACTION

**Unfair competition under Cal. Bus. & Prof. Code § 17200**

64. Midjourney repeats and realleges each and every allegation contained in Paragraphs 1 through 63 above, as if set forth herein in full.

65. Defendants' use and marketing of products and services under the MIDJOURNEY Mark, as alleged above, constitutes unfair competition and an unlawful business practice in violation of Sections 17200 et seq. of the California Business and Professions Code and common law.

66.     Defendants' unfair competition practices, namely, the adoption and use of the identical MIDJOURNEY Mark, have been willful and have been committed with the knowledge of Midjourney's business and use of its MIDJOURNEY Mark.

67.     Defendants' use of the MIDJOURNEY Mark has deceived and is likely to continue deceiving Midjourney's customers and potential customers and/or Defendants' customers and potential customers into believing that Defendants' products and services and Midjourney's products and services are affiliated, associated, and/or endorsed by the other.

68.     As a result of Defendants' acts of unfair competition, Midjourney has been and continues to be substantially and irreparably harmed.  If Defendants' unfair competition is permitted to continue, further damage and irreparable injury will be sustained by Midjourney. Through such unfair acts and use of a confusingly similar mark, the value of the MIDJOURNEY Mark will be diminished or destroyed, for which damage Midjourney cannot be adequately compensated at law.

60.     Defendants have derived unlawful gains and profits from its acts of unfair competition, as alleged above, and has caused loss and damage to Midjourney and the goodwill in the MIDJOURNEY Mark. Midjourney has suffered and is likely to suffer injury to its business, goodwill, reputation, and profit, in an amount as yet unknown but to be proven at trial. Midjourney is therefore entitled to a preliminary and permanent injunction enjoining and restraining Defendants from use of the MIDJOURNEY Mark.

## **PRAYER FOR RELIEF**

WHEREFORE, Midjourney requests that the Court grant the following relief:

1.     That Defendants be adjudged to have infringed the MIDJOURNEY Mark in violation of the Lanham Act and California law;

2. That Defendants be adjudged to have willfully and deliberately infringed the MIDJOURNEY Mark in violation of the Lanham Act and California law;

3. That Defendants be adjudged to have willfully and deliberately used a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact, in violation of the Lanham Act and California law;

4. That Defendants, its officers, agents, employees and all persons acting or claiming to act on its behalf under its direction or authority, and all persons acting or claiming to act in concert or in participation with it or any of them, be preliminarily and permanently enjoined and restrained from infringing the MIDJOURNEY Mark in any manner in the sale, promotion, distribution, purchase, or advertising of Defendants' products or services, and specifically, enjoined from using the MIDJOURNEY Mark, or any mark that is substantially similar to the MIDJOURNEY Mark in connection with AI software;

5. That Defendants be ordered to pay the costs of corrective advertising;

6. That Defendants be ordered to account for and pay over to Plaintiff all gains, profits, and advantages derived by them as a result of their infringement of the MIDJOURNEY Mark;

7. That any of the Defendants' assets that are subject to the jurisdiction of the Court, be restrained and frozen pending the outcome of this action so that Midjourney's rights to the damages set forth in this Complaint are not rendered meaningless, including, but not limited to, all funds paid to Defendants through PayPal, credit cards, direct deposits or other methods used by the Defendants; and

8. For all other relief the Court deems just and proper.

Dated: October 25, 2022

**DLA PIPER LLP (US)**

By: */s/ Gina Durham*
Gina Durham
Jordan Chisek
Oscar Orozco-Botello
Attorneys for Plaintiff
Midjourney, Inc.

## JURY DEMAND

Midjourney demands a trial by jury.

Dated: October 25, 2022

**DLA PIPER LLP (US)**

By: */s/ Gina Durham*
Gina Durham
Jordan Chisek
Oscar Orozco-Botello
Attorneys for Plaintiff
Midjourney, Inc.