UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIDJOURNEY, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>FANTASTIC LABS SP. Z O. O., et al.,<br><br>    Defendants. | Case No. 22-cv-06499-SK<br><br>**REPORT AND RECOMMENDATION ON MOTION FOR DEFAULT JUDGMENT**<br><br>Regarding Docket No. 26 |

Now before the Court is the motion filed by Plaintiff Midjourney Incorporated ("Plaintiff") for default judgment against Defendants Fantastic Labs SP. Z o.o. ("Fantastic Labs"), Wordle Inc. ("Wordle") and Nicholas Sheriff ("Sheriff") (collectively referred to as "Defendants"). Because Defendants have not consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c), this matter must be REASSIGNED to a district court judge. For the reasons set forth below, the Court RECOMMENDS GRANTING IN PART and DENYING IN PART Plaintiff's motion.

**BACKGROUND**

Plaintiff operates a very well-known website and software offering that generate images via text prompts using artificial intelligence technology. Users of the software can type in a series of words, and the AI technology searches image data to generate unique image sets based on the text prompts. (Dkt. No. 1 (Complaint), ¶ 19.) Then, among other functionalities, a user can select an image from the generated image set to upscale an image or create variations. The user can then select an image to save to the user's gallery or share with others. (*Id*.) Plaintiff offers its AI software services through the Discord communications application. (*Id*., ¶ 20.)

In early 2022, Plaintiff offered a private beta version of its AI software, which quickly garnered a significant user base in the tens of thousands before Plaintiff launched its public beta version. (*Id*., 21.) Since Plaintiff entered its open beta stage in July 2022, it has used the

1  "Midjourney" name to identify not only the company but its software offering.  (*Id*., ¶ 22.)

2  Plaintiff's Midjourney name will be referred to as the "MIDJOURNEY Mark."

3        Plaintiff has continuously used the MIDJOURNEY Mark on its website and in connection
4  with its AI software offerings since launching its company.  Plaintiff has attracted a significant
5  number of users over the past several months, with over three million listed users by the time it
6  filed its Complaint in this action.  (*Id*., ¶¶ 23, 24.)

7        Plaintiff has also received significant media attention with its AI image services.  Plaintiff
8  was discussed in a segment titled "AI Images" on the popular late night comedy news show *Last*
9  *Week Tonight with John Oliver*—a show that averages approximately 4.1 million weekly viewers.
10  (*Id*., ¶ 25.)  Plaintiff's AI software was used to design the front cover of the June 11, 2022
11  publication of *The Economist*, which has an approximate online audience of around sixty million.
12  (*Id*., ¶ 26.)

13        Plaintiff is the owner of the pending United States Trademark applications for
14  MIDJOURNEY (Serial Nos. 97597218 and 97597231), covering software for using AI to generate
15  images from text and related services.  (*Id*., ¶ 27.)  Through its open and continuous use of the
16  MIDJOURNEY Mark in interstate commerce, Plaintiff also owns common law rights in and to the
17  MIDJOURNEY Mark.  (*Id*., ¶ 28.)

18        Months after Plaintiff launched its successful text to image AI software, Fantastic Labs
19  listed a mobile application on Apple's App Store in September 2022 and named the mobile
20  application "MIDJOURNEY".  The application was originally designated as being in a "pre-
21  launch" stage but advertised that it would be providing "AI generated art".  The "pre-launch"
22  promotion for the mobile application featured the MIDJOURNEY Mark.  (*Id*., ¶ 29.)  Plaintiff
23  promptly submitted a takedown request with the Apple App Store and requested that the
24  application be removed based on the clear trademark infringement.  Fantastic Labs received notice
25  of Plaintiff's objection.  (*Id*., ¶ 30.)

26        Within hours of receiving Plaintiff's takedown notice, Fantastic Labs and Wordle jointly
27  filed a trademark application on September 16, 2022 for MIDJOURNEY covering, "downloadable
28  software in the nature of a mobile application for creating and editing photographs and for

1  recording and editing videos using AI" in which they fraudulently declared to the United States
2  Patent and Trademark Office that Fantastic Labs and Wordle are the entities entitled to use the
3  MIDJOURNEY mark in commerce and know of no other persons that have the right to use the
4  mark (referred to as "the Fraudulent MIDJOURNEY Trademark Application"). (*Id*., ¶ 31.) The
5  telephone number listed in the Fraudulent MIDJOURNEY Trademark Application belongs to
6  Sheriff. (*Id*., ¶ 32.)

On October 7, 2022, Fantastic Labs made the unauthorized Midjourney mobile application available for download. (*Id*., ¶ 33.)

Sheriff is a trademark pirate who has sought on numerous occasions to usurp the trademark rights of rightful owners. He was personally involved in directing the wrongful conduct against Plaintiff. (*Id*., ¶ 34.) In response to a tweet calling the unauthorized Midjourney mobile application a scam, Sheriff has bragged about his trademark piracy on his personal Twitter account in which he touts "his" application ("I own the trademark for "Midjourney"!"). (*Id*., ¶ 35.) Sheriff also claims to own the Wordle brand as well. (*Id*., ¶¶ 35, 36.)

Sheriff "was quick to brag" on his personal Twitter account that he is making $4,000 an hour from the unauthorized Midjourney application. (*Id*., ¶ 40.)

Customers who have used Defendants' unauthorized application have expressed their dissatisfaction with it. (*Id*., ¶ 42.) Those customers are confused that Plaintiff is the source of or is affiliated with Defendants' application. (*Id*., ¶ 43.)

Apple removed Defendants' app as of October 17, 2022, but Plaintiff remains concerned that Defendants will attempt to re-launch the infringing application and/or will continue to pursue the Fraudulent MIDJOURNEY Trademark Application. (*Id*., ¶ 44.)

Plaintiff brought claims for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), common law trademark infringement, and unfair competition under California Business and Professions Code § 17200. (Dkt. No. 1.)

Plaintiff filed a proof of service for one of the Defendants. (Dkt. No. 7.) The Court granted Plaintiff's motion for alternative service and authorized Plaintiff to serve the other two Defendants by mail and email. (Dkt. No. 17.) Plaintiff then filed a proofs of service for all

Defendants. (Dkt. Nos. 19, 20.)

## ANALYSIS

**A.   Jurisdiction and Service.**

Before entering default judgment, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *See In re Tuli v. Rep. of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brings a federal claim for trademark infringement.

Personal jurisdiction is also satisfied here. While both Fantastic Labs and Wordle are companies incorporated out of state, both companies provided an address in San Francisco, California on their trademark applications and both conducted business in California by selling its infringing mobile application to California residents. The Court has jurisdiction over Sheriff because his is a California resident. (Dkt. No. 1, ¶¶ 14-16.)

Moreover, service here was adequate. The Court granted Plaintiff's motion to serve by mail and email and Plaintiff provide proof of service for all three Defendants. (Dkt. Nos. 7, 17, 19, 20.)

**B.   Standards Governing Default Judgment.**

After entry of default, a court may grant default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980). In determining whether to enter default judgment, a court should consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**C.   Plaintiff's Motion.**

**1.   Prejudice to Plaintiff.**

If the Court denied Plaintiff's motion, it would likely be left without a remedy given

4

1  Defendants' failure to defend this action. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d
2  1172, 1177 (C.D. Cal. 2002).

### 2. Merits of Plaintiff's Claims and Sufficiency of the Complaint.

The second and third factors under *Eitel*, which look to the merits of Plaintiff's substantive claims and the sufficiency of the Complaint, also support entry of default judgment. After an entry of default, well-pled allegations in the complaint are deemed true, except for the amount of damages. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

To prevail on a claim for false designation of origin under 15 U.S.C. § 1125(a), Plaintiff must establish Defendants:

> (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question.

*Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015); *see also* 15 U.S.C. § 1125(a); *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902-04 (9th Cir. 2007). "The elements of a claim for false designation of origin under § 1125 are virtually the same as the elements of a claim for trademark infringement under § 1114, although a § 1114 claim requires ownership of a registered trademark while a § 1125 claim does not." *Iglesia Ni Cristo v. Cayabyab*, 2020 WL 1531349, at *7 (N.D. Cal. Mar. 31, 2020); *see also Brookfield Commc'ns, Inc. v. W. Coast. Ent. Corp.*, 174 F.3d 1036, 1046 n. 8 (9th Cir. 1999).

Here, Plaintiff's allegations, which are taken as true on this motion for default judgment, are sufficient to demonstrate its claim for false designation of origin, as well as its state law claims. (Dkt. No. 1, ¶¶ 19-44.)

### 3. Sum of Money at Stake.

The fourth *Eitel* factor focuses on the amount at issue in the action. "[C]ourts should be hesitant to enter default judgments in matters involving large sums of money." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1099-1100 (N.D. Cal. 2014). "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Board of Trs. v. Core Concrete Const., Inc.*, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at

5

1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted); *see also Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (holding this factor "requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct.").

Here, Plaintiff seeks the amount Defendants boasted that they earned from their fraudulent infringing application – $672,000. This amount is tailored to remedy Defendants' specific misconduct. Therefore, this factor weighs in favor of granting default judgment.

### 4. Remaining *Eitel* Factors.

Because Defendants have defaulted in this action, the possibility of a dispute concerning material facts is unknown. Next, there is no evidence or indication that Defendants' failure to participate was due to excusable neglect. Finally, although the seventh *Eitel* factor – balancing the policy consideration that whenever reasonably possible cases should be decided on their merits – weighs against default judgment, the majority of other factors weigh heavily in favor of default judgment.

Despite the policy of favoring decisions on the merits, default judgment is appropriate when a defendant refuses to litigate a case. Fed. R. Civ. P. 55(b); *see also Bd. of Trustees v. RBS Washington, LLC,* 2010 WL 145097 at *4 (N.D. Cal. Jan. 8, 2010.) Here, Defendants failed to litigate. Therefore, the Court recommends that default judgment be entered against Defendants.

### D. Remedy.

#### 1. Damages.

While the allegations in the Complaint are taken as true for purposes of default judgment, courts must make specific findings of fact in assessing the amount of damages. *See Fair Housing of Marin*, 285 F.3d at 906. Plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Additionally, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the

6

1 pleadings." Fed. R. Civ. P. 54(c).

2       Here, Plaintiff seeks damages in the amount of Plaintiff seeks the amount Defendants boasted that they earned from their fraudulent infringing application – $672,000.  To support its claim for damages, Plaintiff relies solely on a tweet by Sheriff which Plaintiff characterized as bragging that he was making $4,000 an hour from the unauthorized Midjourney application.  (*Id*., ¶ 40.)  Plaintiff does not have any other evidence to substantiate this claim or otherwise demonstrate how much Defendants actually earned.  The Court finds that Plaintiff's request for damages is too speculative and therefore RECOMMENDS DENYING Plaintiff's request for damages.

### 2. Injunctive Relief.

Plaintiff also seeks a permanent injunction.  The Lanham Act "vests the district court with the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116).  To obtain a permanent injunction, Plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  The Court finds that issuing a permanent injunction would be warranted here.  The Court notes the brazen conduct by Defendants in filing an application for a trademark for Plaintiff's mark within hours of receiving Plaintiff's takedown notice. (Dkt. No. 1, ¶ 31.)  Defendants intentionally engaged in fraudulent conduct to attempt to take ownership of Plaintiff's mark.  The Court is concerned that if Defendants are not permanently enjoined, they will start to infringe again.  Diverting Plaintiff's customers and damaging Plaintiff's good will would cause irreparable harm.  Furthermore, the balance of hardships favors Plaintiff because without an injunction, Plaintiff will lose profits and goodwill, while the Defendants will only be inhibited from carrying on their infringing activities.

7

Finally, an injunction is in the public interest because "[t]he public has an interest in avoiding confusion between two companies' products." *Internet Specialties W., Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009). Accordingly, the Court RECOMMENDS Plaintiff be awarded a permanent injunction.

Having determined that Plaintiff is entitled to injunctive relief, the court must determine the appropriate scope of relief. Federal Rule of Civil Procedure 65 requires that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be restrained." Fed. R. Civ. P. 65(d). A broad injunction is especially appropriate "[w]hen the infringing use is for a similar service." *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1177 (9th Cir. 2007) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000)). Here, Plaintiff seeks an injunction generally prohibiting Defendants from the infringing activity. The Court finds that such an injunction is appropriate and is narrowly tailored to the harms caused by Defendants. The Court thus RECOMMENDS issuing the following injunction:

> Defendants, their officers, agents, employees and all persons acting or claiming to act on their behalf are permanently enjoined from: (1) from using the MIDJOURNEY mark, or any mark that is substantially similar to the MIDJOURNEY mark in connection with AI software or related goods and services, (2) registering or applying now or in the future for a federal trademark registration incorporating the MIDJOURNEY mark, and (3) assisting, aiding or abetting any person or entity engaging in or performing any act prohibited by this paragraph.

**3.  Attorneys' Fees.**

Lastly, Plaintiff seeks to recover its attorneys' fees. The Lanham Act permits an award of reasonable attorney fees in "exceptional cases." 15 U.S.C. § 1117(a). "[A] trademark case is exceptional for the purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate, or willful." *Lindy Pen Co. v. BIC Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993); see also *Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 663 (S.D. Cal. 1997) ("a case may be considered 'exceptional' where the defendant disregards the proceedings and does not appear"). Here, Defendants failed to appear and Plaintiff alleges that Defendants' conduct was willful. (Dkt. No. 1, ¶ 53.) The Court must accept these factual allegations as true.

8

Therefore, this case is "exceptional" and Plaintiff is entitled recover attorneys' fees. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (plaintiff was entitled to attorneys' fees under Lanham Act where district court entered default and complaint pled willfulness).

To calculate attorneys' fees, "the district court applies the lodestar method, multiplying the number of hours reasonably expended by a reasonable hourly rate." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "A reasonable hourly rate is ordinarily the 'prevailing market rate [ ] in the relevant community.'" *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorneys' own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted).

The Court finds that Plaintiff has not produced satisfactory evidence that its requested rates are in line with those prevailing in the community. Plaintiff seeks to recover attorneys' fees at the rate of $1,220 per hour for a partner with 23 years of experience and at the rate of $910 for two mid-level associates. Plaintiff does not describe in any detail the attorneys' experience other than the length of time they have been practicing. (Dkt. No. 26-8 (Declaration of Gina L. Durham), ¶¶ 3-5.) The best case Plaintiff cites for support, *Facebook, Inc. v. Holper*, 2022 WL 17167958, at *15 (N.D. Cal. Sept. 27, 2022), *report and recommendation adopted as modified*, 2022 WL 17169836 (N.D. Cal. Nov. 22, 2022), does not justify Plaintiff's requested rates. There, the court found that $530 per hour for second-year associates, up to $725 per hour for a senior associate with significant practice experience, up to $780 per hour for a counsel with nearly twenty years of experience, and up to $1,165 per hour for an office managing partner with thirty years of experience who spent only four hours on the case, was within the reasonable range of the local market. *Facebook, Inc. v. Holper*, 2022 WL 17167958, at *15. The other cases Plaintiff cite are not helpful as they are from 2015 and 2012 and approve lower rates. While presumably the rates have increased over time, in the absence of supporting cases or other evidentiary support, the

Court cannot speculate as the amount rates have risen in the prevailing market. The Court finds that Plaintiff has demonstrated, at most, that a partner with an equivalent number of years' experience was awarded $780 an hour and that associates were awarded between $530 and $725 an hour. Because the associates here were mid-level, and not senior, the Court finds that a rate in between those rates – $630 – would be a reasonable rate. Accordingly, the Court RECOMMENDS awarding fees at the rate of $780 for the partner and $630 for the mid-level associates. The Court also finds that the amount of time Plaintiff has billed for this case 108.9 is reasonable. Therefore, the Court RECOMMENDS that Plaintiff be awarded a total of $72,972 (29.1 hours at $780 and 79.8 hours at $630) in attorneys' fees.

## CONCLUSION

For the foregoing reasons, the Court RECOMMENDS GRANTING IN PART and DENYING IN PART Plaintiff's motion for default judgment. The Court RECOMMENDS DENYING Plaintiff's request for damages and GRANTING Plaintiff's request for a permanent injunction described above and AWARDING Plaintiff $72,972 in attorneys' fees.

Not fewer than three days after this Report, Plaintiff shall serve Defendants with a copy of this Report by any means reasonably calculated to provide actual notice, and file proof of service to that effect. Any party may file objections to these recommendations no later than fourteen days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

**IT IS SO ORDERED AND RECOMMENDED**.

Dated: July 19, 2023



SALLIE KIM
United States Magistrate Judge